## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**Steve FERNANDEZ,**

     Plaintiff,

v.                             Civ. Action No. _____

**Town of CLAYTON**,

a municipality of the State of New Mexico,

**Scott JULIAN**, in his official capacity as

Police Chief of the Clayton Police Department,

**Brian SCHAMBER**, individually and as

an employee of the Clayton Police Department,

**Raul GARCIA**, individually and as

an employee of the Clayton Police Department, and

**Andrew CARVER**, individually and as

an employee of the Clayton Police Department,

        Defendants.

## COMPLAINT FOR RELIEF AND DAMAGES DUE TO DEPRIVATIONS OF CIVIL RIGHTS UNDER COLOR OF STATE LAW AND STATE TORT CLAIMS

## PARTIES

1.      This is an action brought by Steve Fernandez to vindicate deprivations of his constitutional rights caused by the Defendants' retaliations against Mr. Fernandez for exercising his protected right to freedom of speech, constitutional rights to not be subjected to deliberate indifference by Defendant Town of Clayton and Defendant Police Chief Scott Julian, and for state tort claims;

2.      Plaintiff Steve Fernandez is a United States citizen, and a resident of the State of New Mexico, County of Union, Town of Clayton;

3.      At all times relevant hereto, Defendant Brian Schamber was a citizen of the United States and a resident of the State of new Mexico and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant Town of Clayton and/or of the Clayton Police Department. Defendant Brian Schamber is sued individually;

4.      At all times relevant hereto, Defendant Raul Garcia was a citizen of the United States and a resident of the State of New Mexico and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant Town of Clayton and/or of the Clayton Police Department.  Defendant Raul Garcia is sued individually;

5.      At all times relevant hereto, Defendant Andrew Carver was a citizen of the United States and a resident of the State of New Mexico and was acting under color of state law in her capacity as a law enforcement officer employed by the Defendant Town of Clayton and/or of the Clayton Police Department. Defendant Andrew Carver is sued individually;

6.      Defendant Town of Clayton is a New Mexico municipality and is the legal entity

responsible for itself and for the Clayton Police Department. This Defendant is also the employer of the individual Defendants Officers and is a proper entity to be sued under 42 U.S.C. § 1983;

7.      At all times relevant hereto, Defendant Scott Julian was a citizen of the United States and a resident of the State of New Mexico.  Defendant Scott Julian is sued in his official capacity as the Chief of the Clayton Police Department, employed by the Defendant Town of Clayton and/or the Clayton Police Department, and was acting under color of state law;

8.      As the Chief of the Clayton Police Department, Defendant Scott Julian exercised his municipal final decision making power and delegated the same to supervisory officers and others.  On information and belief, he also trained and supervised individual Defendant Officers Brian Schamber, Raul Garcia, and Andrew Carver;

9.      Defendant Town of Clayton and Defendant Scott Julian are properly sued directly under 42 U.S.C. § 1983 for their own, and their delegated, deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of constitutional and statutory violations and resulting injuries;

10.    The Defendant Town of Clayton is also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of Defendant Scott Julian in his official capacity as the Chief of the Clayton Police Department, and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices;

11.     At times relevant to this Complaint, Defendants Scott Julian, Brian Schamber, Raul Garcia, and Andrew Carver were public employees of the Clayton Police Department.  As such, Defendants Scott Julian, Brian Schamber, Raul Garcia, and Andrew Carver were law enforcement officers within the meaning of the New Mexico Tort Claims Act § 41-4-3(D) and, consequently, immunity is waived for the actions complained of herein;

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988, with jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  Venue is proper in this District as Defendants are all residents of New Mexico, except Defendant Garcia who upon information and belief is now residing and employed in Lubbock, TX, and all of the acts complained of occurred in New Mexico.  Plaintiff's cause of action arose in New Mexico;

## FACTUAL BACKGROUND

13.     The Town of Clayton is a very small, rural, farm community in the northeast corner of New Mexico;

14.     Many of Clayton's residents, including Plaintiff, take an active role in the community, and community affairs;

15.   The Town of Clayton contains intersections of major state highways, bringing significant numbers of out-of-state travelers through the jurisdiction of the Town of Clayton;

16.   Plaintiff is active in his community's affairs, vocalizing his concerns of the Clayton Police Department administration, and certain Clayton Police Officers, and the safety of his community;

17.   Plaintiff expressed his concerns that the Town of Clayton and the Clayton Police Department were responsible for irreparable harm to the residents of Clayton, and to the thousands of highway motorists traveling through Clayton, under the leadership of Chief Scott Julian, and by the actions of Police Officer Raul Garcia;

18.   Plaintiff's statements addressed matters of public importance and public concern to the citizens of Clayton and to the thousands of motorists that travel through Clayton;

19.   Plaintiff specifically voiced concern that the Police Chief had hired Officer Garcia after certain events took place in December 2007 while Officer Garcia was employed by the New Mexico State Police and living in Clayton;

20.   Plaintiff's concerns included, in part, a report that Officer Garcia had discharged a firearm in his home during a domestic violence type incident causing Officer Garcia's ex-wife to file a petition for a protection order with the Clayton District Court, and that he sought assistance from fellow N.M. State Police Officers to 'handle' the incident in order to not be disciplined by the State Police;

21.   Sometime after the incidents in December 2007, Officer Garcia left employment with the State Police and began working for the Clayton Police Department;

22.     Plaintiff also voiced his concerns regarding Officer Garcia's patrol actions, which Plaintiff described as conducting traffic stops on young women in order to engage in flirtatious behavior with them, and engaging in aggressive harassment of Clayton's youth population with any legal basis for his actions;

23.     In June of 2008 Plaintiff spoke out against the Police Administration and a lack of oversight by the Town of Clayton Council after Police Chief Julian hired Christopher Dale;

24.     Plaintiff learned of administrative proceedings before the New Mexico Law Enforcement Academy Board meeting, the agency tasked with issuing or revoking certifications of police officers, which was determining what action to take towards Mr. Dale's certification as a police officer in New Mexico;

25.     Plaintiff was able to obtain the minutes of that meeting on the Internet and read that Mr. Dale had been accused of, and admitted to, inserting a glass bottle in his wife's anus during an altercation;

26.     The hearing minutes also established that Mr. Dale had been a police officer in Gallup, N.M., but was terminated after assaulting his wife;

27.     The minutes established that in the employment proceedings at the Gallup Police Department, Mr. Dale had been examined by two different psychologists, and each one made a determination that Mr. Dale was not fit to serve in a capacity as a police officer, resulting in Mr. Dale's separation from the Gallup Police Department;

28.     The minutes of this meeting also showed the Clayton Police Chief Julian appeared at this hearing on Mr. Dale's behalf, the Chief advocated on Mr. Dale's

behalf so that the Clayton Police Department could then employ Mr. Dale, and made an agreement to have Mr. Dale enrolled in outpatient counseling in Clayton in order to have the Board not suspend or revoke Mr. Dale's police certification which would enable Mr. Dale to become a Clayton Police Officer;

29. Later in 2008, Plaintiff was able to learn of another disciplinary hearing at the New Mexico Law Enforcement Academy that directly affected the Town of Clayton;

30. In September of 2008 the Board held a hearing to determine the status of Levi Irwin, an Officer with the state Game and Fish Department who was convicted of shooting a bobcat from his official vehicle;

31. Mr. Irwin was sentenced to 10 days of house arrest and was no longer employed with the Game and Fish Department, but had just started at the Clayton Police Department the week of his hearing;

32. Plaintiff continued to voice his concern to the community over the actions of the Town of Clayton's lack of supervision and control of the Clayton Police, and the Clayton Police Administration by repeatedly hiring police officers that had been involved in such outrageous situations, and the potential of harm that Clayton would be subjected too;

33. Plaintiff voiced his concerns about the Clayton Police Department and Officer Garcia to Town Council members Leroy Montoya and Tony Naranjo in approximately December of 2009;

34. During these informal meetings with the Town's Council members Plaintiff also raised his concerns and fears over reports that Defendant Officer Raul Garcia's

son, Raul Garcia, Jr., was criminally involved in the death of Emilo Trujillo, but that Officer Garcia may have used his influence within the law enforcement community to shield his son from any liability;

35.   Plaintiff had a conversation with Union County Deputy Sheriff Michael Shumate during this time wherein Deputy Shumate communicated to Plaintiff that Defendant Officer Raul Garcia was looking for revenge against Plaintiff for Plaintiff having stated his concerns to Council members and other members of the community, such as the Clayton Postmaster and Clayton business owners;

36.   Deputy Shumate, along with Deputy James Lobb also of the Union County Sheriff's Office, constituted the team certified in that region for dismantling clandestine drug labs;

37.   Defendant Officer Raul Garcia was assigned a drug sniffing K-9 as part of his police/patrol duties and at times went by the title K-9 Narcotic Agent;

38.   Because Clayton and Union County are very sparsely populated and have little resources, the public agencies work together on a number of needs, such as utilizing a joint Town/County communication/dispatch center for emergency services;

39.   Thus, Deputies Shumate and Lobb, as the regional team for dismantling clandestine drug labs, would have interagency contact and communication fairly often with Defendant Officer - or Agent – Raul Garcia, who acted as the purported narcotics agent for the Clayton Police Department;

40.     During this same time period, winter season of 2009-2010, Plaintiff was plowing snow from business parking lots, along with other snowplows, when Defendant Officer Raul Garcia passed Plaintiff in his patrol car;

41.     Defendant Officer Raul Garcia made an abrupt U-turn and proceeded directly towards Plaintiff;

42.     Plaintiff was afraid to be confronted by Defendant Officer Raul Garcia alone without any witnesses, and therefore immediately drove into a Subway restaurant parking lot where other people were around;

43.     Defendant Officer Raul Garcia stated he was citing Plaintiff for not wearing his seatbelt, despite Plaintiff actually having his seatbelt on;

44.     The interchange between Plaintiff and Defendant Officer Raul Garcia became heated, and Plaintiff called Defendant Officer Raul Garcia a "dick" and a "dildo" during the heated confrontation;

45.     In approximately March of 2010 Plaintiff met with Police Chief Scott Julian at the Clayton Police Department, in the Chief's office, specifically to voice his complaints of Defendant Officer Raul Garcia's actions and inappropriate behavior, and to voice his concerns about the Police Chief's actions in hiring new officers, and not training the current police force;

46.     Plaintiff was again able to read about the involvement of the Clayton Police Department in a hearing at the New Mexico Law Enforcement Academy when Plaintiff read the Board's March 25, 2010 minutes concerning Sterlin Desmare, a former officer of the New Mexico Motor Transportation Division in Alamogordo

9

N.M. that reported for duty in uniform, and operated a marked police unit, while intoxicated;

47. The minutes established that Mr. Desmare testified at the hearing, stating: "Also, if you were to give me a second chance, Clayton Police Department has said that they would hire me. … And [Chief Julian] said if I was given another chance, the 90-days probation and one year – the one-year probation on my license that he would hire me and let me work at that department";

48. Plaintiff continued to voice his concern with the community of Clayton over the actions of the Clayton Police Department and the hiring of new officers whose police certifications were suspended and/or on probationary statuses or in some other way limited preventing the Officer from performing regular police duties;

49. Plaintiff appeared for trial at the Clayton Municipal Court in March 2010 on the seatbelt citation issued by Defendant Officer Raul Garcia, wherein Defendant Officer Raul Garcia played a video of the confrontation that occurred, and thereafter the Municipal Court Judge found Plaintiff guilty, and further commented that Plaintiff was lucky Officer Garcia wasn't adding additional charges because Plaintiff had called Defendant Officer Raul Garcia names, suggesting that Plaintiff could not exercise his first amendment right to free speech without penalty of criminal conviction;

50. On March 16, 2010 Plaintiff filed an appeal of his municipal court conviction in the Clayton District Court, and further expressed his concern over the Clayton Police Department, and the results of their apparent ability to operate outside the law with impunity;

51.     Plaintiff's appeal of the seatbelt citation is still pending in the Clayton District Court;

52.     In early September of 2010 Defendant Officer Raul Garcia was in the parking lot of the Union County District Court and Union County Sheriff's Office conversing with Deputies Shumate and Lobb;

53.     Defendant Officer Raul Garcia saw Plaintiff moving about the county buildings and asked the deputies who he was;

54.     The deputies identified Plaintiff by his name;

55.     Defendant Officer Raul Garcia then asked in a harsher voice, "What's he doing here?";

56.     The deputies explained that Plaintiff worked at the county complex;

57.     Defendant Officer Raul Garcia then stated that he couldn't stand the Plaintiff or his mouth, and that "I'm going to get him";

58.     Only days later Defendant Officer Raul Garcia and Defendant Officer Andrew Carver were conducting a 'traffic-stop' of a motorists from out-of-town;

59.     The traffic stop lasted for hours as the Officers 'investigated' supposed drug activity;

60.     The motorist was a woman from Texas traveling with her three young sons;

61.     The driver/mother was forced to remain outside of her car and at a distance from it while Defendant Officers Andrew Carver and Raul Garcia searched every inch, dismantling many parts of the car in order to do so;

62.    The three young boys were forced to stay in the car during this investigation by Defendant Officers Andrew Carver and Raul Garcia, and were interrogated by the Officers as the Officers dismantled and searched the car;

63.    A few members of the community watched as this investigation proceed from noontime into the afternoon;

64.    One of the community members watching was the Plaintiff;

65.    Approximately an hour and fifteen minutes into the investigation, and after Officer Carver Transported the mother to the Clayton jail, the three young boys were left alone in the car as Defendant Officer Raul Garcia continued to take it apart searching for drugs;

66.    At this point Plaintiff walked up to the car, and as he was walking towards the car asked out loud if the boys were alright, if they would like some bottled water, and whether the air conditioner was on in the car;

67.    As preserved by Defendant Officer Raul Garcia's two video recording units, Plaintiff approached the driver's side front door of the car, while asking those questions out loud, and handed three bottles of water through the open window to the young boys inside;

68.    Defendant Officer Raul Garcia was on the opposite side of the car, in the front passenger door jam, dismantling pieces of the car's trim around the door at this time;

69.    Defendant Officer Raul Garcia responded to Plaintiff's questions stating that the boys were ok and that the air was on;

70.     Then Defendant Officer Raul Garcia looked up and realized he was speaking to
        Plaintiff;

71.     At that point Defendant Officer Raul Garcia stated: Hey man, you need to back
        away;

72.     Plaintiff explained that he was just giving some water to the boys as he turned
        and started to walk away, as Defendant Officer Raul Garcia had ordered;

73.     Officer Garcia responded by saying "Hey, but this is none of your business over
        here" twice as Plaintiff was walking away;

74.     After a pause of 2-3 seconds, apparently embracing the opportunity before him,
        Defendant Officer Raul Garcia then stood up and started yelling at Plaintiff
        "Hey, come mere'" and proceeded to go after the Plaintiff;

75.     Defendant Officer Raul Garcia wrote in his police report narrative statement:

        "As I was kneeling down at the front passenger door talking to Raymond my
        attention was directed to the passenger floor board and around to the bottom of
        the passenger seat.  I heard a male's voice state, "Do you kids want some water,
        are you kids alright and is the air on?"  I stated that the air was on and as I
        looked up I noticed Mr. Steve Fernandez had his arm and head inside the driver
        door of the vehicle.  I advised him he needed to back off from there."

        "He became argumentative as he was walking off and I advised him to come
        over to me.  I was walking toward him and once I caught up with him I grabbed
        his right wrist with my right hand and placed my left hand on the back of his
        right shoulder.  I turned him around and advised him to place his hands on the
        vehicle and he was under arrest for interfering with an investigation";

76.     Defendant Officer Raul Garcia wrote at the end of his narrative that the narrative was his statement of probable cause;

77.     After Defendant Officer Raul Garcia arrested Plaintiff by physically controlling his body and ability to move, he then handcuffed Plaintiff, searched his entire person and removed all of Plaintiff's property from his pockets, Officer Garcia then placed Plaintiff in the back of his police vehicle;

78.     Defendant Officer Raul Garcia then contacted the Clayton Police dispatch requesting that Defendant Officer Andrew Carver return to his location, so that he could then transport Plaintiff to jail;

79.     After Defendant Officer Andrew Carver returned to the location of the traffic stop, and after learning the circumstances of Defendant Officer Raul Garcia's arrest of Plaintiff, Defendant Officer Andrew Carver expressed reluctance to be involved in any way, including just driving Plaintiff to the jail, because he did not believe that Defendant Officer Raul Garcia had legal authority to arrest Plaintiff based upon the description of what happened;

80.     Defendant Officer Raul Garcia stated that Defendant Officer Andrew Carver just had to drive Plaintiff to the jail, and that Defendant Officer Raul Garcia would handle the complaint and other required paperwork so Defendant Officer Andrew Carver wouldn't be involved in the arrest and incarceration of Plaintiff;

81.     Despite his expressed reservations over the arrest of Plaintiff, Defendant Officer Andrew Carver transported Plaintiff to the Clayton jail;

82.   It is unclear from what documents are available what the Plaintiff's official
      disposition was at the Clayton jail because he was arrested without a warrant,
      and a criminal complaint was not filed in Plaintiff's case until December 2010;

83.   Plaintiff was incarcerated in the Clayton jail however;

84.   Based upon the absence of a warrant, and a criminal complaint that was filed
      three months later, it is unclear how the Clayton jail incarcerated Plaintiff, except
      by Defendant Officer Raul Garcia's oral request to have Plaintiff detained in the
      jail;

85.   Defendant Officer Raul Garcia prepared a police report stating Plaintiff had been
      arrested and charged with "1 Resisting, Evading or Obstructing an Officer
      (Service of Process)";

86.   The police report contains different dates indicating dates of processing by
      different people of the Clayton Police Department, but it does not contain any
      handwritten signatures or handwritten dates or other means of determining
      when the report was actually written, typed, or printed out;

87.   The narrative section of the police report states that Defendant Officer Raul
      Garcia advised Plaintiff that he was under arrest for "interfering with an
      investigation";

88.   The police report indicates that it was approved by Defendant Lt. Brian
      Schamber on September 27, 2010, and processed by a data entry person on
      September 27, 2010;

89. Defendant Officer Raul Garcia's and Defendant Officer Andrew Carver's actions were reviewed, accepted, approved and ratified by the management and administration of the Clayton Police Department;

90. On December 13, 2010 Defendant Officer Raul Garcia initiated a judicial proceeding/prosecution by filing a criminal complaint against the Plaintiff in the Clayton Municipal Court;

91. The Criminal Complaint was filed in the Clayton Municipal Court, which contains a handwritten signature of Defendant Officer Raul Garcia, states:

"CRIMES CHARGED: **Interference with officers**.

The undersigned, under penalty of perjury, complains and says that on or about the 19TH Day of September 2010, in the Town of Clayton, County of Union, State of New Mexico, The above-named defendant did: **Resist, abuse, molest, hinder, obstruct or refuse to obey or assist when called upon to do so, any police officer, fireman, emergency personnel or judge while in the discharge of his duties**.

Contrary to municipal code 14-30";

92. The Clayton Municipal Code § 14-30 states:

"Sec. 14-30. Interference with Officers.  It is unlawful to resist, abuse, molest, hinder, obstruct or refuse to obey or assist when called upon to do so, any police officer, fireman, emergency personnel or judge while in the discharge of his duty. (Ord. 523, § 2-1-20, 4-15-80)";

93. There are no other statements by Defendant Officer Raul Garcia that describe any facts or circumstances;

94. It remains unknown, to the time of writing this complaint, whether Plaintiff was charged with resisting, or abusing, or molesting, or hindering or how Plaintiff interfered with Defendant Officer Raul Garcia while he was in discharge of his duty;

95. It is clear from Defendant Officer Raul Garcia's video recording units that Plaintiff immediately obeyed Defendant Officer Raul Garcia's command to back off the area by walking away and attempting to walk to the opposite side of the street;

96. Plaintiff timely filed a Notice of Tort Claim with the Town of Clayton on December 16, 2010;

97. Plaintiff accurately described the events that took place during his arrest, as can be verified by Defendant Officer Raul Garcia's report, and the video recording of the events;

98. Plaintiff further noticed the Town of Clayton that the events of his arrest had caused him to be hospitalized overnight, and required additional return trips to the hospital;

99. At Plaintiff's March 08, 2011 trial in the Clayton Municipal Court on the charge, which has been labeled in a multiple number of ways, Defendant Officer Raul Garcia first proceeded to meet with the Municipal Court Judge, in her office, behind closed doors, to apprise the Judge of Defendant Officer Raul Garcia's charges and actions, prior to the trial-taking place;

100. This practice is a routine practice, well settled, wherein the Clayton Police, vested in official police attire, and with descriptions of their harrowing actions of

fighting crime, will inform the lay Municipal Court Judge as to the specifics of the case and what the proper judgment should be;

101.    This widespread and routine practice of the Clayton Police includes the practice of charging individuals with infractions of the Clayton Municipal Code, which are incapable of discerning what the proscribed illegal conduct was, so as to have this control of the judgment at the Municipal Court;

102.    This practice includes the Clayton Police stating that an individual interfered with what that officer was doing, and is then arrested;

103.    Any negative response from the arrested individual is met with additional charges that may include resisting arrest or assault of a police officer;

104.    It is the policy and practice of the Clayton Police administration and management to engage in and promote this practice;

105.    Defendant Police Chief Scott Julian has required his police officers to add additional charges on a report/complaint in furtherance of this practice;

106.    The Town of Clayton is consistently deliberately indifferent to the violations of constitutional rights of individuals by not supervising the administration of the police department, or requiring appropriate police training, and completely failing to monitor any actions of the Clayton Police Department;

107.    When appearing in the Clayton Municipal Court, defendants are not apprised of their constitutional rights during the court proceedings;

108.    The Municipal Court Judge as a matter of routine swears in Defendants under oath for testimony;

109.   Defendants that attempt to resist taking an oath are routinely sanctioned in some manner, *e.g.* Judge ordering that a *pro se* Defendant that didn't swear in could not then speak at all during the trial;

110.   The practice implemented and guided by the Clayton Police is for the Municipal Court to take a statement from the prosecuting Clayton Police Officer, and this routine practice is for the Officer to declare that the Defendant violated a section of the municipal code;

111.   The Municipal Court then addresses the Defendant and requires their explanation of what the police officer stated, or to state their side of the story;

112.   It is the expected result of this practice by the Clayton Police that the Defendant is thereby put into a position of either having to prove his innocence, which by design requires proving that the police officer just lied in court; or that the Defendant address matters related to his soon to be imposed judgment, such as requiring a month to pay any fines;

113.   Following this widespread and accepted practice, Defendant Officer Raul Garcia proceeded to brief the Municipal Court Judge in private before Plaintiff's March 08, 2011 trial, and then when the trial was in session, simply declared that the Plaintiff interfered in his investigation;

114.   When Plaintiff verbally protested as to what was occurring in court, the Municipal Court proceeded to find the Plaintiff guilty of "Interference with an Officer";

115.   Plaintiff promptly filed a Notice of Appeal of the Municipal Court judgment in the Clayton District Court;

116.    This appeal is still pending at the Clayton District Court;


## COUNT I: 42 U.S.C. § 1983

### (Retaliation In Violation Of The First Amendment)

### (Against Defendant Officers Raul Garcia, Andrew Carver, Brian Schamber)


Each and every foregoing allegation is herein incorporated by reference as if fully set forth;

117.    Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983;

118.    All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Clayton police officers and their acts or omissions were conducted within the scope of their official duties or employment;

119.    At the time of the complained of events, Plaintiff had a clearly established constitutional right to be free from retaliation for the exercise of protected speech;

120.    Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time;

121.    The Plaintiff engaged in no activity that would legitimately give rise to a criminal complaint for "interfering with investigation (or Officers)";

122.    Defendant Police Officers were well aware that there was no probable cause to charge Plaintiff with "interfering with investigation (or Officers)";

123. Defendant Police Officers were aware that Plaintiff had exercised his First Amendment protected right of speech, speech that was about a public concern and is a matter of public importance;

124. Mr. Fernandez exercised his constitutionally protected right to question law enforcement and/or engaged in protected speech related to the constitutional rights of citizens with respect to the actions by the Clayton police and objectionable police conduct;

125. Retaliatory animus for Mr. Fernandez's exercise of his constitutionally protected right to voice his concerns and request corrective action for the Clayton Police Department regarding the scope of their authority, abuse of municipal codes and ability to conduct warrantless arrests, arrests without probable cause, improper use and abuse of court procedures to accomplish unlawful objectives, the appropriateness and level of training for police officers, and the required level of character/credibility/suitability of potential police officers was a substantially motivating factor in the to arrest Plaintiff Steve Fernandez without a warrant and/or probable cause, incarcerate him without lawful authority, and pursue prosecution without probable cause and by improperly utilizing court procedures by the individual Defendants;

126. The Defendants had no probable cause to arrest Plaintiff on the charge of Interfering with an investigation;

127. The actions taken against Plaintiff in retaliation for his protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct;

128. All of these Defendant officers participated in actions taken against the Plaintiff as a means of retaliation for Plaintiff speaking out about his concerns and

challenging the policymakers of the Town of Clayton and the Clayton Police Department and none of the Defendants took reasonable steps to protect Plaintiff from this retaliation for the protected speech. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer;

129. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Fernandez's federally protected constitutional rights;

130. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries;

131. The individual Defendants acted in concert and joint action with each other, and individually;

132. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages;

133. Defendants are not entitled to qualified immunity for the complained of conduct;

134. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff;

135. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial;

136. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts

to be established at trial;

137.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre- and post-judgment interest and costs as allowable by federal law;

138.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff;

## COUNT II: 42 U.S.C. § 1983

**(Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision Resulting In Constitutional Injuries/Deprivations)**

**(Against Defendant Town of Clayton and Defendant Police Chief Scott Julian)**

Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein;

139.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .;

140.    Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983;

141.  The Defendants to this claim at all times relevant hereto were acting under the color of state law;

142.  Plaintiff had the following clearly established rights at the time of the complained of conduct:

    a.  the right to be secure in his person from unreasonable seizure under the Fourth Amendment;

    b.  the right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment; and

    c.  the right to exercise his constitutional rights of free speech under the First Amendment without retaliation;

143.  Defendant Police Chief Scott Julian and Defendant Town of Clayton knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time;

144.  The acts or omissions of these Defendants, as described herein, deprived Plaintiff Steve Fernandez of his constitutional and statutory rights and caused him other damages;

145.  The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages;

146.  Defendants are not entitled to qualified immunity for the complained of conduct;

147.  Defendant Police Chief Scott Julian was, at all times relevant, a policymaker for the Town of Clayton and the Clayton Police Department, and in that capacity established policies, procedures, customs, and/or practices for the same;

148.  These Defendant developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the

violations of Mr. Fernandez's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives;

149.    Defendant Police Chief Scott Julian and Defendant Town of Clayton have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public;

150.    In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights;

151.    The deliberately indifferent training and supervision provided by Defendant Police Chief Scott Julian and Defendant Town of Clayton resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Police Chief Scott Julian and Defendant Town of Clayton and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff;

152.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial;

153.    As a further result of the Defendants' unlawful conduct, Plaintiff has incurred

special damages, including medically related expenses and may continue to

incur further medically or other special damages related expenses, in amounts to

be established at trial;

154.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C.

§1988, and pre- and post-judgment interest and costs as allowable by federal law;

155.    Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to

42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate

indifference in policies, practices, habits, customs, usages, training and

supervision with respect to the rights described herein, and with respect to the

ongoing policy and/or practice of the Clayton Police Department in failing to

investigate or appropriately handle complaints of the same, which Defendants

have no intention for voluntarily correcting despite obvious need and requests

for such correction;


### COUNT III: MALICIOUS ABUSE OF PROCESS — N.M. TORT CLAIM

### (Lack of Probable Cause)

### (Against Defendant Officers Brian Schamber, Raul Garcia, Andrew Carver)


Each and every foregoing allegation is herein incorporated by reference as if fully

set forth;

156.    The Defendant Officers caused the initiation of judicial proceedings against

Plaintiff on the charge of "Interfering with Investigation (or Officer)";

157.   The Defendant Officers did not have a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that the claim can be established to the satisfaction of a court or jury;

158.   Taking the criminal complaint as a whole, the lack of probable cause was manifest;

159.   The Defendant Officers' actions in the use of process were not proper in the regular prosecution for the aforementioned charges;

160.   The Defendant Officers' primary motive in misusing the legal process was to accomplish an illegitimate end;

161.   As a result of the charges that were wrongfully brought against him, Plaintiff was arrested and incarcerated, had his freedom restricted while his trial was pending, and suffered other harms and damages to be proven at trial, including but not limited to pain and suffering in the form of emotional and psychological distress of the type and sort that any person could be expected to experience under like or similar circumstances. Thus, Defendant's wrongful acts proximately caused Plaintiff to suffer damages;

162.   As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial;

163.   As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial;

164.   Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C.

§1988, and pre- and post-judgment interest and costs as allowable by federal law;

165.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff;

## COUNT IV: MALICIOUS ABUSE OF PROCESS — N.M. TORT CLAIM
### (Procedural Impropriety)
### (Against Defendant Officers Brian Schamber, Raul Garcia, Andrew Carver)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth;

166.    Defendant Officers actions were perpetrated for the purposes of retaliation against Plaintiff, and for other additional wrongful use of proceedings;

167.    Defendant Officers used the judicial proceedings in an improper manner that is not contemplated by law;

168.    Defendant Officer Raul Garcia has stated to other law enforcement officers that he 'will get him' meaning that he will get revenge against the Plaintiff;

169.    Defendant Officer Raul Garcia arrested Plaintiff without probable cause, utilized the assistance of the other Defendant Officers to incarcerated Plaintiff, and filed a criminal charge in the Clayton Municipal Court the lack any basis for prosecution or probable cause that Plaintiff committed a criminal offense;

170.    Defendant Officer Raul Garcia engaged in the wide-spread and well settled practice of the Clayton Police in improperly obtaining convictions in the Clayton

28

Municipal Court by meeting with the Municipal Court Judge *ex parte* prior to trial to brief the judge on their desired judgment, and by engaging in acts during trial the usurp a Defendant's right to, and possibility of benefiting from due process at that trial;

171.    Defendant Officer Raul Garcia's improper use of the criminal proceedings were designed to guarantee a judgment against the Plaintiff, and to impose a judgment as a form of retaliation or punishment against Plaintiff;

172.    As a result of the Defendants' improper use of the judicial proceedings, Plaintiff suffered damages, including but not limited to pain and suffering in the form of emotional and psychological distress of the type and sort that any person could be expected to experience under like or similar circumstances, restrictions upon his freedom and movement and other damages to be proven at trial, thus Plaintiff's injuries were proximately caused by Defendants' unlawful actions;

173.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial;

174.    As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial;

175.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, and pre- and post-judgment interest and costs as allowable by federal law;

176.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named

Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff;

## COUNT V: BATTERY — N.M. TORT CLAIM

### (Against Defendant Officers Brian Schamber, Raul Garcia, Andrew Carver)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth;

177.   Defendant Officer Raul Garcia and Defendant Officer Andrew Carver committed the tort of battery on the Plaintiff when they offensively touched Plaintiff, causing fear, apprehension, and actual injury;

178.   Defendant Officers physically seized Plaintiff, forced him against a car, handcuffed him, and them physically forced Plaintiff into incarceration;

179.   Defendants' battery of Plaintiff was the proximate cause of Plaintiff's injuries;

180.   Defendant Officers did not have any lawful basis for the bodily contact, seizure, and use of force on Plaintiff;

181.   Defendant Officers accomplished these unlawful acts through the approval and ratification by Brian Schamber;

182.   As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial;

183.   As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to

30

incur further medically or other special damages related expenses, in amounts to be established at trial;

184. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, and pre- and post-judgment interest and costs as allowable by federal law;

185. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff;

## COUNT VI: FALSE ARREST/FALSE IMPRSIONION — N.M. TORT CLAIM
### (Against Defendant Officers Brian Schamber, Raul Garcia, Andrew Carver)

Each and every foregoing allegation is herein incorporated by reference as if fully set forth;

186. Defendant Officer Raul Garcia and Defendant Officer Andrew Carver committed the tort of false arrest/false imprisonment on the Plaintiff when they intentionally confined and restrained Plaintiff without his consent and with knowledge that they had no lawful authority to do so;

187. Defendant Officers restrained, confined, and imprisoned Plaintiff against his will, without probable cause for arrest or an arrest warrant on September 19, 2010;

188. Defendant Officers' actions were to further an improper and unlawful objective in retaliation against Plaintiff;

189.   Defendants' false arrest/false imprisonment of Plaintiff was the proximate cause of Plaintiff's injuries;

190.   Defendant Officers accomplished these unlawful acts through the approval and ratification by Brian Schamber;

191.   As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial;

192.   As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial;

193.   Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, and pre- and post-judgment interest and costs as allowable by federal law.

194.   In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

   A.   Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all

claims allowed by law in an amount to be determined at trial;

B.  Economic losses on all claims allowed by law;

C.  Special damages in an amount to be determined at trial;

D.  Punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E.  Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F.  Pre- and post-judgment interest at the lawful rate; and,

G.  Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## LIMITATION OF DAMAGES SOUGHT

No punitive damages are sought for claims brought pursuant to the New Mexico Tort Claims Act.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

**DATED** this 20th day of September, 2012.

*The Law Offices of David R. Jordan, P.C.*

*/s/ David R. Jordan, Esq. filed electronically 09/20/12*
David R. Jordan, Esq.

*/s/ Alexander Beattie, II, Esq. filed electronically 09/20/12*
Alexander Beattie, II, Esq.

309 East Nizhoni Blvd.
P.O. Box 840
Gallup, New Mexico 87305
Attorneys for Plaintiff